UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF FLORIDA

MIAMI DIVISION

Case No. _____

BRIAN EVANS,

Plaintiff,

v.

SCOTT THOMPSON,

professionally known as "Carrot Top,"

Defendant.

FILED BY____ClvC____ D.C.

JUL 08 2026

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - FT. LAUD.

**COMPLAINT FOR DECLARATORY JUDGMENT, RESCISSION, FRAUDULENT INDUCEMENT, AND INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

**INTRODUCTION**

This action arises from a written settlement agreement executed in 2024 between Plaintiff Brian Evans and Defendant Scott Thompson, professionally known as "Carrot Top." Plaintiff alleges that the agreement is voidable and should not be enforced because, at the time it was executed, Plaintiff lacked the mental capacity necessary to knowingly and voluntarily enter into a binding contract (See Exhibit A & B). Plaintiff's impaired mental condition resulted from severe psychiatric injuries sustained following the August 8, 2023 Maui wildfires, which caused Post-Traumatic Stress Disorder (PTSD), generalized anxiety disorder, major depressive disorder, insomnia, and related impairments that substantially affected his judgment, concentration, decision-making abilities, emotional regulation, and ability to understand the nature and long-

1

term consequences of complex contractual documents. These symptoms persisted throughout the period during which the agreement was negotiated and signed. Defendant knew or reasonably should have known of Plaintiff's compromised mental and emotional state during this period, yet proceeded with settlement negotiations and obtained Plaintiff's signature on documents while Plaintiff was unable to fully comprehend their long-term legal consequences.

Plaintiff further alleges that he entered into the agreement while relying upon representations by Defendant concerning future professional assistance and entertainment opportunities, including assistance with projects such as "The Funny Robbers," a country song, and other performances and productions. Plaintiff once served as the opening act for Defendant. These representations were material to Plaintiff's decision to resolve the underlying dispute and formed an important part of his understanding of the parties' relationship, which Plaintiff reasonably believed extended beyond ordinary professional interactions into a genuine friendship. The anticipated professional assistance did not materialize. The representations were false when made, as evidenced by Defendant's prior transmission of unsolicited sexually explicit material that destroyed any foundation of trust. Plaintiff contends that these circumstances, combined with his impaired mental state at the time of execution, fraudulently induced him to enter the agreement on terms he otherwise would not have accepted.

Plaintiff also alleges that, following execution of the agreement, it was relied upon by persons and entities who were not parties to the settlement and who provided no consideration in exchange for the contractual protections they later asserted despite being non-signatories. Plaintiff contends that this subsequent use of the agreement in unrelated litigation caused additional injuries beyond those contemplated when the agreement was signed, including substantial litigation expenses, emotional distress, reputational injury, and lost professional

opportunities. Additionally, Plaintiff executed a stipulation of dismissal during the settlement process that contained no case caption, court designation, or case number at the time of execution. This blank stipulation was later used in litigation unrelated to the original dispute, causing further legal expenses, emotional distress, and reputational harm. Plaintiff successfully moved to seal certain filings after the stipulation publicly identified Defendant.

Plaintiff seeks declaratory and equitable relief concerning the validity, scope, and enforceability of the agreement, together with damages for fraudulent inducement and intentional infliction of emotional distress caused by Defendant's conduct. Plaintiff does not seek merely to unwind the transaction; he seeks compensation for the additional harms he has suffered as a result of Defendant's conduct and the subsequent misuse of documents obtained while Plaintiff lacked capacity.

As a direct result of Defendant's provision of the stipulation of dismissal and related settlement documents, Plaintiff was forced to initiate separate legal proceedings against Chad Fitzgerald and Signature Resolution. Those proceedings, as well as the Creative Artists matter now on appeal in the Eleventh Circuit, involve reliance by non-parties on the 2024 settlement agreement and related documents. Plaintiff has submitted medical records and capacity opinions demonstrating that he lacked the mental capacity to enter into the agreement with Defendant, as well as the related documents and agreements upon which Chad Fitzgerald and Signature Resolution now seek to rely (both filed within this District). These records have also been submitted to the appellate court for review in the Creative Artists matter.

**JURISDICTION AND VENUE**

This Court has subject matter jurisdiction under 28 U.S.C. § 1332(a) because Plaintiff and Defendant are citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs. Plaintiff is a citizen and resident of the State of Florida. Defendant Scott Thompson maintains a residence and owns real property in the Orlando/Winter Park area of Florida and is therefore subject to personal jurisdiction in this Court pursuant to Fla. Stat. § 48.193 (Florida's long-arm statute), including provisions regarding ownership or possession of real property in Florida and the commission of acts causing injury within Florida.

Plaintiff has suffered substantial damages, including emotional distress from the video transmission (which continued and was exacerbated in Florida) and harms from the 2024 settlement (executed while lacking capacity), within this District. This Court's exercise of jurisdiction satisfies constitutional due process requirements because Defendant has sufficient minimum contacts with Florida such that the suit does not offend traditional notions of fair play and substantial justice.

Venue is proper in the Southern District of Florida pursuant to 28 U.S.C. § 1391(b) because Plaintiff resides within this District, a substantial part of the events or omissions giving rise to the claims occurred or were experienced within this District, and substantial damages were suffered here.

Defendant has purposefully availed himself of the privileges of conducting activities within the State of Florida in multiple material respects that give rise to or relate directly to each of the claims asserted in this action. Defendant owns real property in the Orlando/Winter Park area of Florida. In addition, for a period of more than one year, Defendant has made regular and ongoing payments to Plaintiff through Plaintiff's bank account located in the State of Florida, pursuant to the 2024 settlement agreement whose validity, enforceability, scope, and effect on non-

4

signatories are the central subjects of Plaintiff's claims. These regular, directed payments into Florida constitute purposeful performance of obligations under the very agreement at issue and establish a substantial nexus between Defendant's contacts with this forum and Plaintiff's claims. See *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478–79 (1985).

Defendant, or attorneys and agents acting on Defendant's behalf, further provided the stipulation of dismissal—executed by Plaintiff during the period in which he lacked mental capacity— directly to Defendant's attorneys as part of the settlement process. That stipulation was subsequently inserted and filed by non-parties into a completely new and unrelated case in Florida court. This conduct has directly caused Plaintiff to incur substantial additional litigation expenses in Florida courts, to suffer exacerbated emotional distress and reputational injury while residing in Florida. These acts and the resulting concrete injuries occurring in Florida constitute additional purposeful contacts. See *Wendt v. Horowitz*, 822 So. 2d 1252, 1260 (Fla. 2002); *Ford Motor Co. v. Montana Eighth Judicial Dist. Court*, 141 S. Ct. 1017, 1026 (2021).

Defendant's ownership of real property in Florida, his direction of regular settlement payments into a Florida bank account for more than one year, and his (or his agents') provision of settlement documents that foreseeably resulted in their use and consequent litigation in Florida courts—when combined with the ongoing and exacerbated emotional distress caused by the video transmission and by the capacity-impaired execution of the agreement, all of which Plaintiff has experienced while residing in Florida—establish that Defendant has sufficient minimum contacts with Florida such that the maintenance of this suit in this District does not offend traditional notions of fair play and substantial justice. See *Venetian Salami Co. v. Parthenais*, 554 So. 2d 499, 502 (Fla. 1989). Florida has a compelling interest in adjudicating

these claims, which arise under Florida law governing contract capacity, fraudulent inducement, rescission, and intentional infliction of emotional distress.

## PARTIES

Plaintiff Brian Evans is an individual residing in Hallandale Beach, Broward County, Florida. He is a professional entertainer, fifteen-time Billboard charting recording artist, songwriter, and performer who has worked in the entertainment industry for many years.

Defendant Scott Thompson, professionally known as "Carrot Top," is an individual who maintains a residence in the Orlando/Winter Park area of Florida and is subject to service of process in this District according to applicable law.

## FACTUAL BACKGROUND

Plaintiff and Defendant developed what Plaintiff reasonably believed to be a genuine friendship that extended beyond ordinary professional interactions in the entertainment industry. Plaintiff has appeared as an opening act for the Defendant in Las Vegas at the MGM Grand Hotel. Defendant expressed a personal interest in assisting Plaintiff with future entertainment projects, performances, productions, and other professional opportunities. These discussions included specific projects such as "The Funny Robbers" and a country song. These representations and discussions continued during the period leading to settlement negotiations and materially influenced Plaintiff's understanding of the parties' relationship and his willingness to execute the settlement agreement on the terms presented.

**Transmission of Sexually Explicit Video and Breakdown of the Parties' Relationship**

During approximately 2022 or 2023, while Plaintiff reasonably believed that he and Defendant had developed a genuine friendship founded upon mutual trust, respect, and an ongoing

6

professional relationship, Defendant transmitted to Plaintiff, via text message, a sexually explicit video depicting Defendant engaged in oral sex with a male who appeared to Plaintiff to be significantly younger than Defendant. Plaintiff was immediately shocked, disturbed, and offended by the transmission of the video, which was entirely unsolicited. Plaintiff neither requested, encouraged, nor consented to receiving sexually explicit material from Defendant and immediately deleted the video from his cellular telephone. Plaintiff later discovered that the video had been preserved through his iCloud account, at which time he promptly notified Defendant's representatives of its existence and of his objection to having received it.

This incident fundamentally and irreparably altered Plaintiff's understanding of Defendant and the nature of their relationship. Plaintiff realized that Defendant did not view their relationship as the genuine friendship and professional association Plaintiff had believed it to be. The transmission of this video destroyed Plaintiff's trust and confidence in Defendant, caused Plaintiff substantial emotional distress, and became powerful evidence that Defendant's later representations regarding future professional assistance, collaborative projects, and continued friendship were false when made. Plaintiff contends that the video incident demonstrates Defendant never intended to treat Plaintiff as a genuine friend or professional colleague, thereby supporting Plaintiff's claim that he was fraudulently induced to place trust and confidence in Defendant during the events leading to the execution of the settlement agreement.

The unsolicited transmission of the sexually explicit video caused Plaintiff immediate and severe emotional distress, shock, and lasting psychological harm that persisted and worsened following the Maui wildfires trauma. This additional emotional stress and distress continued into and throughout the period of the 2024 settlement negotiations and execution, further impairing Plaintiff's judgment and decision-making abilities. Under Florida law, such conduct constitutes

7

extreme and outrageous behavior supporting liability for intentional infliction of emotional distress. See *Metropolitan Life Ins. Co. v. McCarson*, 467 So. 2d 277 (Fla. 1985). The transmission is also consistent with the type of conduct addressed in Florida's sexual cyberharassment statute, Fla. Stat. § 784.049.

**Plaintiff's Mental Capacity at the Time of the 2024 Agreement**

On August 8, 2023, Plaintiff experienced the Maui wildfires. Those catastrophic events caused severe psychological trauma that substantially and persistently affected his emotional functioning, judgment, concentration, decision-making abilities, and ability to evaluate complex legal consequences. Plaintiff immediately sought and has continued to receive ongoing psychiatric treatment following the wildfires. Treating mental health providers have diagnosed Plaintiff with Post-Traumatic Stress Disorder (PTSD), Generalized Anxiety Disorder (GAD), Major Depressive Disorder (MDD), insomnia, and related impairments. These conditions manifested in symptoms including intrusive recollections of the trauma, hypervigilance, anxiety, emotional distress, avoidance behaviors, sleep disturbance, impaired concentration, difficulty with emotional regulation, and reduced ability to effectively process stressors and exercise clear judgment, particularly during periods of heightened psychological distress.

Plaintiff's treating psychiatric providers have provided professional medical opinions, based on direct clinical evaluations, review of psychiatric history, objective clinical findings, mental status examinations, and longitudinal observation during treatment, that Plaintiff lacked the mental capacity to enter into or sign any agreement or contract of any kind during the period from the time of the Maui wildfires through at least September 23, 2025. A letter dated July 1, 2026 from Heramba Mental Healthcare (Tchido Yao, DNP, ARNP, PMHNP-BC), who treated Plaintiff until his last clinical evaluation on September 23, 2025, states that it is the provider's

8

professional opinion that Plaintiff lacked capacity to enter into any contractual agreement during that entire period. A detailed letter and sworn declaration dated June 30, 2026 from Violet Healthcare (Gladys Mariam Olivera, PMHNP-BC), who has treated Plaintiff since December 3, 2025, documents the persistence of significant PTSD symptoms through early 2026, confirms that these symptoms substantially affected Plaintiff's emotional functioning and ability to exercise clear judgment, and notes gradual clinical improvement only by approximately February 27, 2026. These medical opinions and supporting records constitute admissible evidence that Plaintiff will rely upon in this action.

Under well-established Florida law, a contract entered into by a party who lacks sufficient mental capacity is voidable at the election of the incapacitated party. The Florida Supreme Court has long held that the test for mental incapacity in contract matters is whether the party had "sufficient intelligence to understand fully the nature and effect of the transaction." *Waterman v. Higgins*, 28 Fla. 660, 672, 10 So. 97, 100 (1891). This standard was reaffirmed in *Douglas v. Ogle*, 80 Fla. 42, 85 So. 243 (1920), and *Donnelly v. Mann*, 68 So. 2d 584 (Fla. 1953). The modern formulation applied in Florida, consistent with the Restatement (Second) of Contracts § 15, is whether the party was "unable to understand in a reasonable manner the nature and consequences of the transaction." Plaintiff's psychiatric impairments substantially affected his ability to understand the legal consequences of the settlement agreement and the related stipulation of dismissal. He was emotionally vulnerable during settlement negotiations. His impaired condition, including difficulty with concentration, emotional regulation, and decision-making under stress, affected his ability to evaluate the long-term legal consequences of executing these documents. Plaintiff would have approached the proposed agreement and the decision to sign a blank stipulation differently had he possessed full mental capacity and had the

9

representations regarding future professional assistance not been made against the backdrop of the video betrayal that had already destroyed the foundation of trust.

**Misuse of the Agreement and Stipulation by Non-Signatories**

The settlement agreement executed in 2024 extended contractual protections, releases, or other benefits to additional persons or entities who were not signatories to the agreement and who allegedly provided no independent consideration for those protections. Those provisions were later asserted by non-parties in unrelated litigation, causing Plaintiff to incur substantial additional litigation expenses, emotional distress, and other harms that were not contemplated at the time the agreement was signed.

During the settlement process, Plaintiff executed a stipulation of dismissal that, at the time of execution, contained no case caption, court designation, or case number. This blank document was subsequently filed or used by persons and entities who were not parties to the 2024 settlement agreement and who had no involvement in the original dispute. These non-signatories inserted the stipulation of dismissal into a new and completely unrelated case that was filed after the settlement for issues that had nothing whatsoever to do with Defendant or the original dispute between Plaintiff and Defendant. The use of this document in the unrelated post-settlement litigation publicly identified Defendant and caused Plaintiff to incur substantial additional legal expenses to address the filing (including successfully moving to seal the records), and resulted in further emotional distress, reputational injury, and other harms. These damages were not contemplated at the time the agreement was signed and were directly caused by the execution of the settlement documents while Plaintiff lacked capacity and was fraudulently induced by Defendant's representations.

10

Plaintiff alleges continuing and ongoing damages, including but not limited to: litigation expenses incurred in connection with the subsequent use of the agreement and stipulation by non-parties; emotional distress and psychiatric injury exacerbated by these events and by the prior video transmission; reputational injury; and lost professional and entertainment opportunities that Plaintiff reasonably anticipated would be advanced through the representations made by Defendant. These damages continue to accrue and will be further developed through discovery.

## COUNT I — DECLARATORY JUDGMENT

Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

An actual, substantial, and justiciable controversy exists between the parties regarding the validity, scope, and enforceability of the 2024 settlement agreement and the related stipulation of dismissal. Plaintiff contends that the agreement is voidable or otherwise unenforceable because he lacked the mental capacity required to knowingly, intelligently, and voluntarily execute the contract at the time of signing, and because the agreement was procured through fraudulent inducement.

Under well-established Florida law, a contract entered into by a party who lacks sufficient mental capacity is voidable at the election of the incapacitated party. *Waterman v. Higgins*, 28 Fla. 660, 10 So. 97 (1891); *Douglas v. Ogle*, 80 Fla. 42, 85 So. 243 (1920); *Donnelly v. Mann*, 68 So. 2d 584 (Fla. 1953); Restatement (Second) of Contracts § 15. Plaintiff's treating mental health professionals, based on direct clinical evaluations, psychiatric history, objective findings, and longitudinal observation, have opined that Plaintiff lacked this required capacity during the

entire period from the August 8, 2023 Maui wildfires through at least September 23, 2025. This period fully encompasses the 2024 settlement negotiations and execution of the agreement. The July 1, 2026 opinion letter from Heramba Mental Healthcare and the June 30, 2026 letter and sworn declaration from Violet Healthcare provide detailed, admissible medical evidence supporting these allegations.

A judicial declaration resolving the validity, scope, and enforceability of the agreement, including its effect (if any) on non-signatories and the validity of the blank stipulation, would terminate the uncertainty and controversy giving rise to this action and would clarify the rights and obligations of the parties going forward. Plaintiff therefore requests declaratory relief pursuant to 28 U.S.C. § 2201 and applicable Florida substantive law.

## COUNT II — RESCISSION

Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

Equitable rescission of the settlement agreement and related documents is appropriate and warranted because the agreement was executed while Plaintiff lacked the mental capacity necessary to knowingly and voluntarily assent to its terms, as established under Florida law set forth above, and because the agreement was procured through fraudulent inducement. The circumstances surrounding execution—including Plaintiff's documented psychiatric impairments, emotional vulnerability, the context of representations regarding future professional assistance, and the prior video betrayal that destroyed trust—render enforcement of the agreement inequitable and unconscionable. The strong medical opinions from treating

12

providers (Heramba and Violet letters with sworn declaration) provide compelling evidence supporting rescission.

Rescission would restore the parties, to the extent practicable and as equity requires, to their respective legal positions prior to execution of the agreement. Plaintiff requests that the Court grant rescission, together with damages in the alternative, and such other and further equitable relief as the Court deems just and proper, including any relief necessary to address the subsequent misuse of the agreement and stipulation by non-parties.

## COUNT III — FRAUDULENT INDUCEMENT

Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

In the context of what Plaintiff reasonably understood to be a genuine friendship and professional relationship extending beyond adversarial negotiations, Defendant made representations to Plaintiff concerning future professional assistance and entertainment opportunities, including specific projects such as "The Funny Robbers" and other performances and productions. These representations were material facts that substantially influenced Plaintiff's decision to execute the settlement agreement. These representations were false when made. The falsity is demonstrated by Defendant's earlier transmission of the unsolicited sexually explicit video, which revealed that Defendant did not view Plaintiff as a genuine friend or professional colleague deserving of respect and honest dealing. Defendant made these representations against the backdrop of that betrayal and while Plaintiff was in a demonstrably impaired mental and emotional state following the Maui wildfires.

Plaintiff reasonably and justifiably relied on these representations when deciding to enter into the agreement, particularly given his impaired mental state, the context of the ongoing relationship, and his belief that the resolution included future collaborative opportunities. Plaintiff's reliance was reasonable under the circumstances because Defendant had cultivated a relationship of apparent trust and had made specific representations about future professional assistance that Plaintiff, in his impaired condition, was unable to critically evaluate. The representations induced Plaintiff to resolve the dispute on terms he otherwise would not have accepted. The anticipated professional assistance and opportunities did not materialize. Plaintiff suffered damages as a direct and proximate result of entering into the agreement in reliance on these representations, including the loss of expected professional opportunities, the harms caused by the subsequent use of the agreement by non-parties, and additional emotional distress and litigation expenses caused by the video transmission and the broken promises.

Under Florida law, a contract induced by fraud is voidable at the option of the defrauded party. *Mazzoni Farms, Inc. v. E.I. DuPont De Nemours and Co.*, 761 So. 2d 306 (Fla. 2000); *Lou Bachrodt Chevrolet, Inc. v. Savage*, 570 So. 2d 306 (Fla. 4th DCA 1990); *Besett v. Basnett*, 389 So. 2d 995 (Fla. 1980). Plaintiff requests such relief as may be available under the evidence, including rescission of the agreement or an award of compensatory damages for the injuries proximately caused by the fraudulent inducement.

## COUNT IV — INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

Plaintiff realleges and incorporates by reference each and every allegation set forth in the preceding paragraphs as if fully set forth herein.

14

Defendant's transmission of the unsolicited sexually explicit video depicting Defendant engaged in oral sex with a male who appeared to Plaintiff to be significantly younger than Defendant was extreme and outrageous conduct that went beyond all possible bounds of decency and is regarded as atrocious and utterly intolerable in a civilized community. This conduct was particularly outrageous because it occurred in the context of a relationship Defendant had cultivated as one of apparent friendship and professional respect, and at a time when Plaintiff was emotionally vulnerable. The transmission was intentional or reckless, particularly given the context of the parties' claimed friendship and professional relationship and Plaintiff's known vulnerability following the Maui wildfires trauma. Defendant knew or reasonably should have known that transmitting such material to Plaintiff would cause severe emotional distress, especially in light of Plaintiff's compromised mental state. The transmission caused Plaintiff severe emotional distress, shock, and lasting psychological harm that persisted and was exacerbated during the period of his PTSD and other impairments from the Maui wildfires. Plaintiff's treating psychiatric providers (Heramba Mental Healthcare and Violet Healthcare letters and sworn declaration) have documented the severe emotional distress and functional impairments caused by this incident and the surrounding circumstances.

Under Florida law, a defendant is liable for intentional infliction of emotional distress when he engages in conduct that is so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized community. *Metropolitan Life Ins. Co. v. McCarson*, 467 So. 2d 277 (Fla. 1985). Plaintiff suffered severe emotional distress as a direct and proximate result of Defendant's conduct. Plaintiff requests compensatory damages for the severe emotional distress caused by the video transmission, in addition to any other relief the Court deems just and proper.

15

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Brian Evans respectfully requests that this Honorable Court enter judgment in his favor and against Defendant as follows:

A. Enter a declaratory judgment pursuant to 28 U.S.C. § 2201 declaring the respective rights of the parties concerning the 2024 settlement agreement, including that the agreement is voidable or unenforceable due to Plaintiff's lack of mental capacity at the time of execution and due to fraudulent inducement; declaring the limited scope and effect of any releases or protections purportedly granted thereunder; and declaring that the agreement does not bar or release claims arising from its subsequent misuse by non-parties;

B. Grant equitable relief, including rescission of the settlement agreement and any related documents (including the stipulation of dismissal), if supported by the evidence and applicable law, and restore the parties to the status quo ante to the extent practicable, together with any necessary accounting or other equitable adjustments as the Court deems just and proper, or in the alternative, award damages;

C. Award Plaintiff compensatory damages for fraudulent inducement and for the additional injuries, expenses, and harms caused by the subsequent use of the agreement and stipulation by non-parties and by Defendant's transmission of the unsolicited sexually explicit video, in an amount to be determined at trial but in excess of $5,000,000, exclusive of interest and costs;

D. Award Plaintiff his taxable costs and such other and further relief, both legal and equitable, as the Court deems just and proper.

E. Award Plaintiff Punitive Damages.

**DEMAND FOR JURY TRIAL**

16

Plaintiff hereby demands a trial by jury on all issues so triable.

Respectfully submitted,

**Brian Evans**

Plaintiff, pro se

2080 South Ocean Drive, Suite 1505

Hallandale Beach, Florida 33009

(954) 214-3076

## EXHIBITS

Exhibit A: Letter and Sworn Declaration from Violet Healthcare (Gladys Mariam Olivera, PMHNP-BC), dated June 30, 2026

Exhibit B: Letter from Heramba Mental Healthcare (Tchido Yao, DNP, ARNP, PMHNP-BC), dated July 1, 2026